The Honorable Benjamin H. Settle
Hearing Set: Monday, September 26, 2016, 3:00 p.m.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

| | |
|---|---|
| ROQUE "ROCKY" DE LA FUENTE,<br><br>                    Plaintiff,<br><br>         v.<br><br>KIM WYMAN, in her official capacity as the Secretary of State of the State of Washington,<br><br>                    Defendant. | NO. 3:16-cv-5801 BHS<br><br>DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER |

## I.      INTRODUCTION

This Court should deny Mr. De La Feunte's motion for an emergency temporary restraining order. Washington's ballots are already printed and more than 72,000 of them will have been mailed to military and overseas voters by 5:00 pm today, Friday, September 23, 2016. Almost all of Washington's 3.3 million state Voters' Pamphlets have already been printed and many have been mailed to military and overseas voters. Mr. De La Fuente is too late to stop ballots from being printed without his name on them.

His request for injunction should also be denied because his arguments fail on the merits. Mr. De La Fuente does not dispute that he failed to meet Washington's statutory

1

requirements for holding a minor party nominating convention. Instead, he ultimately claims that Wash. Rev. Code § 29A.56.620 is an unconstitutional restriction on his ability to gain access to the ballot. But Mr. De La Fuente applies the wrong standard for reviewing an election law that does not impose a severe restriction to ballot access. Here, a reasonably diligent minor party or independent candidate could easily comply with the statute. Indeed five other minor party candidates did so in 2016. Thus, the statute need not survive strict scrutiny; instead it need only further the State's important regulatory interests.

The State has an important interest in ensuring that Washington citizens have notice of minor party and independent conventions so that interested voters can attend to learn about the candidate or party platform. In addition, anyone who wants to serve as an elector should be aware of when and where the convention will be held so that he or she can show up and seek selection as an elector. The statute also legitimately requires newspaper publication, a means of notice that courts themselves frequently rely upon, and a longstanding means that Washington voters have come to expect to be used to give notice of elections, as well as minor party conventions.

## II.       FACTS RELEVANT TO MOTION

### A.       Overview of the Requirements for Independent and Minor Party Presidential Candidates to Be Placed on the Ballot in Washington

An independent or minor party candidate for President can be nominated by a convention in Washington. Wash. Rev. Code §§ 29A.56.600-.670. The legislature has defined "convention" to mean "an *organized assemblage* of registered voters representing an independent candidate or candidates or a new or minor political party, organization, or principle." Wash. Rev. Code § 29A.56.600 (emphasis added). An independent or minor party

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

convention must occur between the first Saturday in May and the fourth Saturday in July in a presidential election year. Wash. Rev. Code § 29A.56.610. An independent candidate or minor party may hold more than one convention, but "[t]o be valid, a convention must be attended by at least 100 registered voters[.]" Wash. Rev. Code § 29A.56.610; *see also* Nieland Decl., Ex. 3, at 4 ("At least 100 registered Washington voters must attend each meeting."). To appear on the ballot, the independent candidate or minor party must collect the signatures and addresses of at least 1,000 registered Washington voters on a nominating petition for the candidate of their choice. Wash. Rev. Code § 29A.56.640(5). The candidate or party may add together the signatures collected at multiple conventions in order to meet the 1,000-signature requirement. Wash. Rev. Code § 29A.56.610.

Wash. Rev. Code § 29A.56.620 provides that "[e]ach minor party or independent candidate must publish a notice in a newspaper of general circulation within the county in which the party or the candidate intends to hold a convention. The notice must appear at least ten days before the convention is to be held, and shall state the date, time, and place of the convention." This requirement has been in place since 1937. Wash. Rev. Code § 29A.56.620; former Wash. Rev. Code § 29.24.025 (1989-2004); former Wash. Rev. Code § 29.24.030 (1937-1988). The Secretary of State's Guide for Minor Party and Independent Presidential Candidates explains this notice requirement and provides a sample public notice of convention, a template, and a sample affidavit of publication. Nieland Decl., Ex. 3, at 4-5.

Wash. Rev. Code § 29A.56.640 requires the minor party or independent candidate to file a certificate evidencing nominations made at a convention. The certificate "must" be "verified by the oath of the presiding officer and secretary" of the convention, be accompanied

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER NO. 3:16-CV-5801 BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

by a nominating petition "bearing the signatures and addresses of at least one thousand registered [Washington] voters," and "[c]ontain proof of publication of the notice of calling the convention." Wash. Rev. Code § 29A.56.640. The certificate of nomination must be submitted to the Secretary of State "not later than the first Friday of August" in the presidential election year. Wash. Rev. Code § 29A.56.640. Under Wash. Rev. Code § 29A.56.670, the Secretary of State's Office must then determine whether the requirements listed in Wash. Rev. Code § 29A.56.640 have been met and notify the presiding officer of the convention of the Secretary of State's decision. The Secretary of State does not have discretion to ignore or unilaterally waive the statutory requirements. *See, e.g.*, *In re Det. of A.S.*, 138 Wash. 2d 898, 927 n.13, 982 P.2d 1156 (1999) ("shall" and "must" are read to create mandatory obligations).

In addition, minor party and independent candidate conventions that nominate candidates for president and vice president must also select presidential electors. Wash. Rev. Code § 29A.56.660. The list of presidential electors selected at the convention must be submitted to the Secretary of State soon after the convention adjourns. Wash. Rev. Code § 29A.56.660.

Any appeal regarding the Secretary of State's decision to accept or reject the certificate of nomination must be filed in the superior court of Thurston County not later than five days from the date the determination is made. Wash. Rev. Code § 29A.56.670. The appeal must be heard and finally disposed of within five days of the filing. Wash. Rev. Code § 29A.56.670. These time limits are in place under state law to facilitate timely ballot printing and mailing. Neither Mr. De La Fuente, nor any representative of his, filed an appeal in Thurston County Superior Court within the statutory deadline.

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

For the 2016 presidential election, five minor party/independent candidates were able to meet all of Washington's statutory requirements, including the requirement that there be notice of the minor party convention. Augino Decl. at 3. All five of those minor party/independent candidates will appear on the general election ballot. *Id.* In 2012, six minor party candidates were able to meet all of Washington's statutory requirements and appeared as presidential candidates on the general election ballot. *Id.* In 2008, five minor party candidates and one independent candidate were able to meet all of Washington's statutory requirements and appeared as presidential candidates on the general election ballot. *Id.*

**B.      Mr. De La Fuente Failed to Meet the Statutory Requirements, So the Secretary of State's Office Rejected His Certificate of Nomination**

In June, the Washington Secretary of State's Office began communicating by phone and by email with Trenton Pool who indicated he was a consultant working for Mr. De La Fuente. Nieland Decl. at 1. On June 20, 2016, the Secretary of State's Office sent Mr. Pool the Secretary of State's Office's Presidential Guide for Minor Party and Independent Candidates. Nieland Decl., Exs. 3-4. The guide  explains (at pages 4 and 5) the convention notice requirement and provides a sample public notice of convention, a template, and a sample affidavit of publication. Nieland Decl., Ex. 3. Mr. Pool therefore received the guide five weeks before the deadline for completing minor party and independent candidate conventions, July 23, 2016. Wash. Rev. Code § 29A.56.610.

On July 25, 2016, Mr. Pool submitted a certification of minor party nomination for the American Delta party, identifying Mr. De La Feunte as its nominated candidate for President. Nieland Decl. at 2; Ex. 5. The certificate of nomination clearly identifies Mr. De La Fuente as the nominee of the American Delta Party, not as an independent candidate. Nieland Decl.

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

at 2; Ex. 5. The certification did not contain the required proof of convention notice publication. *Id.* The Secretary of State's Office explained that the party would need to submit proper proof of the notice publication. *Id.* The deadline for submitting the required proof was August 5, 2016. *Id.*

Mr. Pool attempted to cure the defect in the certification, but his submission, an unsworn personal statement with no affidavit of publication from a newspaper, still did not meet the statutory requirements. Nieland Decl., Exs. 7, 8, 9. While Mr. De La Fuente asserts that he produced evidence that notification had been published via Facebook post, De La Fuente Decl. at 2, the Secretary of State's Office did not communicate directly with Mr. De La Fuente, and neither Mr. De La Fuente nor Mr. Pool provided copies or documentation of Facebook posts. Nieland Decl. at 2-3. Nevertheless, given the plain statutory requirement, Facebook posts would not have been accepted as proper proof of convention notice publication in any event because Facebook is not a newspaper of general circulation. *Id.*

Neither Mr. Pool, nor any other representative of Mr. De La Fuente was able to provide the required proof that notice of the nominating convention(s) was ever published. Nieland Decl. at 3. The Secretary of State's Office therefore rejected the certificate of nomination for insufficiency under Wash. Rev. Code §§ 29A.56.620, .640 and .670 on August 8, 2016, six weeks before this action was filed. Nieland Decl., Ex. 10. The rejection letter was addressed to the presiding officer of the convention as required by statute, and the Secretary of State's Office provided the statutory appeal process and deadlines. *Id.* A representative of Mr. De La Fuente then asked the Secretary of State to reconsider, but that request was denied on August 11, 2016. Augino Decl, Ex. 2.

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Mr. De La Fuente failed to meet the deadline for appealing to superior court under state law, and then waited several more weeks after the Secretary of State's final decision to bring this action. Compl., Docket No. 1 (September 19, 2016). All of Washington's counties have printed their ballots, and as of 5:00 p.m. this afternoon, Friday, September 23, 2016, more than 72,000 military and overseas ballots will have been mailed pursuant to federal and state requirements. Augino Decl at 1-2.

### III.   ARGUMENT

Preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In each case, the court must balance the competing claims and consider the effects on each party, paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* The party seeking injunctive relief bears the burden of establishing that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and finally, (4) that an injunction is in the public interest. *Id.* at 20. Under the Ninth Circuit's "sliding scale" approach to this test, the court balances the elements so that a "stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). At "an irreducible minimum," however, "the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation" in addition to establishing the other factors before relief may be granted. *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105-06 (9th Cir. 2012).

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER NO. 3:16-CV-5801 BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

Mr. De La Fuente has not met his burden to obtain injunctive relief here. In asserting his claims, Mr. De La Fuente fundamentally mischaracterizes the application and purpose of Washington's convention notice requirement found in Wash. Rev. Code § 29A.56.620. Contrary to his arguments, the statute does not bar political speech or restrict who may engage in petitioning activity in Washington. Instead, the convention notice requirement constitutes a legitimate ballot regulation that only minimally burdens candidates' access to the ballot and furthers Washington's interest in notifying the public of when nominating conventions will occur and who will sponsor the event.

**A.   This Court Should Deny the Motion Because Mr. De La Fuente Waited More Than a Month to Bring This Action, and in the Meantime, Ballots and Voters' Pamphlets Have Been Printed**

"Where a plaintiff seeks solely equitable relief, his action may be barred by the equitable defense of laches if (1) the plaintiff delayed unreasonably in asserting his rights and (2) the defendant was prejudiced by this delay." *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 647 (6th Cir. 2004). "In the context of elections, this means that any claim against a state electoral procedure must be expressed expeditiously." *Fulani v. Hogsett*, 917 F.2d 1028,1031 (7th Cir. 1990); *Kay v. Austin*, 621 F.2d. 809, 813 (6th Cir. 1980). "As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights." *Kay*, 621 F.2d at 813. In *Kay*, the Court applied laches where a candidate waited two weeks to file a lawsuit after he knew he would not be placed on the ballot, where preliminary work had already been done to prepare ballots. *Id.* And in *McCarthy v. Briscoe*, 539 F.2d 1353,

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1354-55 (5th Cir 1976), the Court found that the entire election process would be disrupted by a lawsuit filed in late July seeking ballot access for the general election in November.

The elements of laches are knowledge and reasonable opportunity for the plaintiff to discover he has a cause of action, an unreasonable delay in commencing the action, and damage to the defendant resulting from the delay. *Lopp v. Peninsula Sch. Dist. 401*, 90 Wash. 2d 754, 804 585 P.2d 801 (1978). Here, Mr. De La Fuente knew of the Secretary of State's decision to reject his certification on August 8, 2016, and that she declined to reconsider on August 11, 2016. Between August 11 and September 19, 2016 when this complaint was filed, the ballots and Voters' Pamphlets were prepared and printed. Augino Decl. at 1-2. And the Secretary of State's publicly available website reflects the September 24, 2016, deadline for mailing ballots to military and overseas voters. http://www.sos.wa.gov/elections/calendar.aspx. A five week delay at this critical time in the election cycle is unreasonable. *See Kay*, 621 F.2d at 813.

The Secretary of State and the counties are certainly prejudiced by the delay. At this point, ballots and Voters' Pamphlets have been printed and thousands have been mailed, all without Mr. De La Fuente's name on them. A specific remedy he seeks—an order stopping ballot printing—is no longer available. And to the extent he plans to assert alternatives, it would be exceedingly difficult, if not impossible, to print and mail another set of ballots and Voters' Pamphlets, especially when the deadline for providing ballots to military and overseas voters has come and gone. The confusion that would accompany a last-minute issuance of a second ballot would interfere with the rights of Washington citizens whose ballots have been mailed to meet a strict deadline in federal law. *See Fulani*, 917 F.2d at 1031; *see also Purcell v.*

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

*Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."). As a result, this Court should decline to issue an injunction that would impact the 2016 general election ballots at this late date.

**B.      Strict Scrutiny Does Not Apply Because the Challenged Statute Regulates Ballot Access for Independent and Minor Party Candidates and Does Not Impermissibly Restrain Speech**

The motion for injunction should also be denied because Mr. De La Fuente is wrong on the merits. The United States Supreme Court has long recognized a state's expansive power to prescribe the election process within broad constitutional bounds. *E.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008); *Clingman v. Beaver*, 544 U.S. 581, 586 (2005); *Bullock v. Carter*, 405 U.S. 134, 141 (1972). "States have significant flexibility in implementing their own voting systems." *John Doe No. 1 v. Reed*, 561 U.S. 186, 195 (2010). "To the extent a regulation concerns the legal effect of a particular activity in that process, the government is afforded substantial latitude to enforce that regulation." *Id.* This is because the Court recognizes that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

Accordingly, the Court rejected resolving challenges to state election laws by "any 'litmus-paper test.'" *Anderson*, 460 U.S. at 789 (citing *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Instead, the Court chose to apply a flexible approach that weighs the "character and magnitude of the asserted injury" against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. "In passing judgment, the Court must not only determine the legitimacy and strength of each of those

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id*. Only if a state election law imposes "'severe' restrictions" must it also be "narrowly drawn to advance a state interest of compelling importance" to pass constitutional muster. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). If, on the other hand, the law imposes "only 'reasonable, nondiscriminatory restrictions,'" then the state's "'important regulatory interests'" generally suffice to justify restrictions. *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788).

In order to escape the deference that courts give to reasonable state electoral requirements and to invoke strict scrutiny, Mr. De La Fuente contends that Washington's convention notice requirement is not a "normal ballot access requirement" because it serves as a bar to "core political speech" by restricting "petitioning activity." Mem. of Law at 6-7. He also likens the notice requirement to a "temporary prior restraint" that censors speech within a specified area. *Id*. at 9. But Mr. De La Fuente makes these claims without explaining how the convention notice requirement, which serves to ensure that interested voters have an opportunity to participate in the independent and minor party convention process and to serve as electors, somehow amounts to a burden on the right to petition or a prior restraint.

Mr. De La Fuente has provided no proof that the Secretary of State's Office interprets the statutory convention requirements to be "watered down" so much that minor party and independent candidate conventions can simply be signature-gathering campaigns. Nor would such an interpretation carry any weight because it would conflict with the plain language of the statutory requirements. Wash. Rev. Code § 29A.56.610 ("to be valid, a convention must be attended by at least 100 registered voters"); *see also* Nieland Decl., Ex. 3, at 4 ("At least 100

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1   registered Washington voters must attend each convention."); Wash. Rev. Code § 29A.56.600

2   (convention is "an organized assemblage of registered voters representing an independent

3   candidate or candidates or a new or minor political party, organization, or principle").

4       Moreover, unlike the cases that Mr. De La Fuente cites, the State's convention notice

5   requirement does not restrict who can collect nominating petition signatures. Mem. of Law at

6   7-8 (citing *e.g.*, *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182

7   (1999)(requirement that signature gatherers be registered voters of the state); *Meyer v. Grant*,

8   486 U.S. 414 (1988) (prohibition on paid signature gatherers)). Any advocate for a minor party

9   candidate can attend a convention and promote the candidate's nomination by helping to

10  collect signatures.

11      Mr. De La Fuente also seems to raise an argument as to the timing of nominating

12  conventions in relation to the notice requirement. Mem. of Law at 8. But as applied in this

13  case, Mr. De La Fuente's representative was notified of the publication requirements on

14  June 20, 2016, more than a month before the window for holding a convention closed on

15  July 23, 2016. Nieland Decl., Ex. 4. He had plenty of time to publish timely notice and hold a

16  convention or series of conventions within the statutory timeframe.

17      Similarly, the State did not impose a prior restraint on speech in any way, and the

18  publication notice requirements certainly impose no prior restraint. There is no allegation that

19  anyone was required to obtain a state permit or other state permission to hold a convention.

20  The notice publication requirement does not in any way restrict what someone can say at a

21  minor party convention. No government permit is required for supporters of a candidate to talk

22  to voters and gather signatures at a convention. Supporters of Mr. De La Feunte could—and

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

did—obtain nominating signatures without any evidence of government interference. Thus, Mr. De La Fuente cannot legitimately claim a prior restraint on anyone's speech.

While Mr. De La Fuente tries to shoehorn these circumstances into some category of First Amendment restriction that requires strict scrutiny, this Court should conclude that the analysis in this case must track the longstanding analysis in ballot access cases.

**C.    Under the Proper Ballot Access Analysis, Wash. Rev. Code § 29A.56.620 Does Not Impose a Severe Burden and It Is Supported by the Important Government Interest in Ensuring that Voters Have Notice of Independent Candidate and Minor Party Conventions**

Under the correct analysis specific to ballot access cases, the appropriate level of scrutiny depends upon the severity of the burden. *Burdick*, 504 U.S. at 434. If the burden on the plaintiff's rights is severe, then this Court must apply strict scrutiny. *Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784, 793 (9th Cir. 2012). But if the state's ballot access regulation imposes only a slight burden, the procedures will survive review so long as they further a state's "important regulatory interests." *Id.* at 794 (quoting *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir 2008)); *see also*, *Anderson*, 460 U.S. at 788.

When determining whether a burden is severe, the Ninth Circuit has looked to whether "'reasonably diligent' candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so." *Nader*, 531 F3d at 1035; *see also Storer*, 415 U.S. at 742 (posing the question: "could a reasonably diligent independent candidate be expected to satisfy the . . . requirements . . . "?; and considering candidates' past success or failure in obtaining ballot access); *Wash. State Republican Party*, 676 F.3d at 794.[1]

---

[1] Very recently, in *Public Integrity Alliance, Inc. v. City of Tucson*, No. 15-16142, 2016 WL 4578366, at *4 (9th Cir. Sept. 2, 2016), the Ninth Circuit en banc re-examined the *Burdick* test as re-articulated in *Libertarian Party of Wash. v. Munro*, 31 F.3d 759 (9th Cir. 1994). The *Public Integrity Alliance* Court made it clear that under

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1

2   Here, the burden imposed by the convention notice requirement is slight as evidenced

3   by the multiple minor party and independent candidates who have been able to gain access to

4   the Washington ballot as presidential candidates in recent history. Augino Decl. at 3.

5   The Secretary of State's guide for candidates provides a clear and simple roadmap for

6   providing the appropriate notice of conventions. Nieland Decl., Ex. 3, at 4-5. Five other minor

7   parties/independent presidential candidates were successful in meeting the convention

8   publication requirements in 2016. Augino Decl. at 3. For example, the Libertarian Party held

9   conventions in multiple counties that were structured so that there were sometimes multiple

10  meeting times and locations in a single county. Nieland Decl., Ex. 11. The notices also

11  provided that the conventions would meet at a time and date certain, but the convention could

12  then be continued to such time as necessary until all of the convention business was completed.

13  Nieland Decl., Ex. 11.

14  Prior presidential election years have produced similar results. In 2012, six minor party

15  candidates were able to meet all of Washington's statutory requirements and appeared as

16  presidential candidates on the general election ballot. In 2008, five minor party candidates and

17  one independent candidate were able to meet all of Washington's statutory requirements and

18  appeared as presidential candidates on the general election ballot. *Contrast with Nader*, 531

19  F.3d at 1031 (no minor candidate had qualified for the ballot in 15 years). This historical

20  evidence demonstrates that reasonably diligent presidential candidates have often met

21

22

23

24

25  the appropriate *Burdick* ballot access test, the standard is not rational basis review, nor is there burden shifting to
    require the plaintiffs to show no rational basis exists for the ballot access regulation. But this discussion does not

26  undermine the Ninth Circuit's and the Supreme Court's test for determining whether a burden on ballot access is
    severe: could a reasonably diligent candidate be expected to satisfy the requirements imposed by the statute?

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

Washington's convention notice requirement and gained access to Washington's general election ballot.

Finally, Washington's history of placing multiple minor party and independent candidates on the presidential ballot shows that its regulations are far from being the type of "stringent ballot access requirements" for presidential elections that troubled the Court in *Anderson*. *Anderson*, 460 U.S. at 795. *See* Mem. of Law at 12. Unlike an impermissible early filing deadline, Washington's notice requirement does not place a significant state-imposed restriction on the nationwide electoral process such that federal minor party candidates cannot gain access to the state ballot. Instead, as shown, the requirement can be easily met and federal candidates have regularly achieved ballot access in Washington, assuming they apply reasonable dilgence. Because the burden imposed by Washington's convention notice requirement is in no way severe, this court should not apply strict scrutiny.

Wash. Rev. Code § 29A.56.620 is therefore valid if it furthers the State's "important regulatory interests," and it does. *Wash. State Republican Party*, 676 F.3d at 793. The voting public has a strong interest in participation in, and therefore notice of, minor party and independent candidate conventions. Washington's statutes contemplate an "organized assemblage" of at least 100 registered voters. Wash. Rev. Code §§ 29A.56.600, .610. These public gatherings are important because they often provide the voting public with the first opportunity to learn about a minor party or a candidate and their platform. Registered voters who want to support a minor party candidate must choose well because they can sign only one nominating petition. Wash. Rev. Code § 29A.56.630. This informational function of the

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

convention can be fulfilled only if the public receives adequate notice of the convention's time, place, and location.

Minor party conventions must also select a slate of presidential electors. Wash. Rev. Code § 29A.56.660. If a Washington citizen wants to be selected to serve as an elector for a minor party or independent candidate, he or she must know when and where to show up for a convention.[2]

Notice in a newspaper of general circulation has been the method of notice for minor party and independent candidate conventions for decades. *See* former Wash. Rev. Code § 29.24.025 (1989-2004); former Wash. Rev. Code 29.24.030(2) (1937-1989); 1937 Wash. Sess. Laws page 383 (ch. 94, § 3). It is reasonable to conclude that given this longstanding requirement, newspaper publication is the means through which interested citizens expect to be notified of minor party conventions. And newspaper publication is still the statutorily required means of notice in other important circumstances, including giving notice of primary, general, and special elections, Wash. Rev. Code § 29A.28.050, Wash. Rev. Code § 29A.52.355, and courts rely on service of civil defendants by publication in some circumstances, Wash. Rev. Code § 4.28.110.

This Court should conclude that Washington's convention notice requirement imposes a minor burden on parties and candidates, but it serves an important government interest. As a result, it is a constitutional prerequisite to ballot access for minor party candidates.

---

[2] Even if this Court were to apply strict scrutiny, there is a compelling interest in full public awareness of and participation in minor party conventions. The interest in informing voters who want to serve as electors about how to appear at the convention is also compelling. And a newspaper publication requirement is narrowly tailored to serve those interests—publication has not proven to be a difficult hurdle for other candidates in recent years.

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1
2

**D.** **Balancing the Remaining Injunctive Elements Does Not Tip the Equities in Mr. De La Fuente's Favor.**

3
4

Because Mr. De La Fuente cannot show that he is likely to succeed on the merits, this

Court need not reach the remaining elements for obtaining injunctive relief. *C.f. Nevada Green*

5
6

*Party v. Cegavske*, No. 2:16-cv-01951-JAD-CWH, 2016 WL 4582050, at *3 (D. Nev.

Sept. 1, 2016). But, even if this Court were to consider those factors, the equities do not

7

support granting Mr. De La Fuente extraordinary injunctive relief.

8
9

Mr. De La Fuente will not suffer irreparable harm if his name is not placed on the

10

general ballot through the nominating convention process. While Mr. De La Fuente did not

11

meet the requirements for having his name printed on the ballot, he may still gain access to the

12

ballot by filing a write-in candidate declaration by October 21, 2016, pursuant to Wash. Rev.

13

Code § 29A.24.311. Upon doing so, any voter may write-in Mr. De La Fuente's name for

14

president and that vote will be counted the same as if the name had been printed on the ballot.

15

Wash. Rev. Code § 29A.60.021(1). Accordingly, Mr. De La Fuente still has adequate access to

16
17

the presidential ballot in light of his indolence in adhering to Washington's procedures for

18

nominating conventions.

19

In contrast, if Mr. De La Fuente receives his requested equitable relief, the State and the

20

public will be substantially prejudiced. As previously noted, the ballots and Voters' Pamphlets

21

have already been printed for the general election. More importantly, more than 72,000 ballots

22

and many accompanying Voters' Pamphlets will have been issued pursuant to federal statutory

23

requirements for military and overseas voters by the time this matter is before the Court. It

24

would be exceedingly difficult, if not impossible, for the State to issue another, different set.

25
26

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

Moreover, it could cause confusion and potential chaos for voters to receive alternate materials in the short time before the election.

Accordingly, while Mr. De La Fuente claims that no public harm will result from the issuance of an injunction, this simply is not true. As shown, the equities do not tip in his favor and an injunction is not in the public's interest. Washington law afforded Mr. De La Fuente reasonable opportunity to gain access to the state's presidential ballot. That he chose not to avail himself of that opportunity through reasonable diligence should not be placed at the feet of the State or its voting constituents. No injunction should result.

## IV.   CONCLUSION

This Court should deny Mr. De La Fuente's emergency motion for preliminary injunction because he has brought his motion too late; of the eighteen independent and minor party candidates who have submitted certifications of nomination in recent years, he is the only one who has failed to meet the convention notice requirements; the notice requirements serve an important public interest; and any injunction at this stage would severely prejudice the voting public.

DATED this 23rd day of September 2016.

ROBERT W. FERGUSON
Attorney General

*s/ Rebecca R. Glasgow*
REBECCA R. GLASGOW, WSBA 32886
CALLIE A. CASTILLO, WSBA 38214
Deputy Solicitors General
PO Box 40100
Olympia, WA 98504-0100
360-753-6200
Rebecca.Glasgow@atg.wa.gov
Callie.Castillo@atg.wa.gov

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
EMERGENCY TEMPORARY
RESTRAINING ORDER
NO. 3:16-CV-5801 BHS

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1

## Certificate of Service

2

3    I certify, under penalty of perjury under the laws of the state of Washington, that I

4    electronically filed a true and correct copy of the foregoing document with the United States

5    District Court ECF system, which will send notification of the filing to the following:

6    Donald H. Mullins                    Paul Anthony Rossi
     Wesley Foreman                       IMGP Advocates, INC
7    Badgley Mullins Turner PLLC          873 East Baltimore Pike, Suite 705
     19929 Ballinger Way NE, Suite 200    Kennett Square, PA 19348
8    Seattle, WA 98155                    paul-rossi@comcast.net
     donmullins@badgleymullins.com
9    wforeman@badgleymullins.com

10       DATED this 23rd day of September 2016, at Olympia, Washington.

11

12                                   s/ Stephanie N. Lindey
                                     STEPHANIE N. LINDEY
                                     Legal Secretary

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S RESPONSE TO                      19                ATTORNEY GENERAL OF WASHINGTON
PLAINTIFF'S MOTION FOR                                              1125 Washington Street SE
EMERGENCY TEMPORARY                                                     PO Box 40100
RESTRAINING ORDER                                                  Olympia, WA  98504-0100
NO. 3:16-CV-5801 BHS                                                   (360) 753-6200