UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROQUE "ROCKY" DE LA FUENTE,<br><br>               Plaintiff,<br><br>   v.<br><br>KIM WYMAN, in her official capacity as the Secretary of State for the State of Washington,<br><br>               Defendant. | CASE NO. C16-5801 BHS<br><br>ORDER RESERVING RULING ON PLAINTIFF'S AND DEFENDANT'S CROSS-MOTIONS FOR SUMMARY JUDGMENT AND SCHEDULING ORAL ARGUMENT |

      This matter comes before the Court on the motion for summary judgment of Plaintiff Roque "Rocky" De La Fuente ("Plaintiff") and the cross-motion for summary judgment of Defendant Kim Wyman in her role as Washington State's Secretary of State ("the State"). Dkts. 30, 33. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and for the reasons stated below hereby reserves ruling on the parties' motions and renotes them for consideration on February 14, 2018.

ORDER - 1

# I. BACKGROUND

In 2016, Plaintiff ran as a candidate for President of the United States. In pursuit of the presidency, Plaintiff sought to be placed on Washington State's ballot as a candidate for the American Delta Party.

Washington State regulations provide that minor party or independent presidential candidates may be placed on the State's ballot by obtaining a valid nomination and presenting the Secretary of State with a "certificate of nomination." RCW 29A.56.600–.670. To be nominated, a minor party or independent candidate must hold one or multiple "conventions," each attended by at least one hundred voters, whereat the candidate obtains "nominating petitions" from at least 1,000 registered Washington voters. RCW 29A.56.600–.620. A "nominating petition" must be signed and bear the voter's printed name and address. RCW 29A.56.630.

This case revolves around the State's requirement that a convention be proceeded by the publication of ten days' notice in a newspaper of general circulation. Specifically, the State requires:

> Each minor party or independent candidate must publish a notice in a newspaper of general circulation within the county in which the party or the candidate intends to hold a convention. The notice must appear at least ten days before the convention is to be held, and shall state the date, time, and place of the convention. Additionally, it shall include the mailing address of the person or organization sponsoring the convention.

RCW 29A.56.620.

A minor party or independent presidential candidate can then be placed on the ballot by presenting the Secretary of State with a "certificate of nomination." RCW 29A.56.640. To be valid, the certificate must:

> (1) Be in writing;
> (2) Contain the name of each person nominated, his or her residence, the office for which he or she is named, and a sworn statement from both nominees giving their consent to the nomination;
> (3) Identify the minor political party or the independent candidate on whose behalf the convention was held;
> (4) Be verified by the oath of the presiding officer and secretary;
> (5) Be accompanied by a nominating petition or petitions bearing the signatures and addresses of at least one thousand registered voters of the state of Washington;
> (6) Contain proof of publication of the notice of calling the convention; and
> (7) Be submitted to the secretary of state not later than the first Friday of August.

*Id.* If a party has failed to publish notice of a convention in compliance with RCW 29A.56.620 and submit proof of that publication, then the certificate of nomination will be rejected by the Secretary of State and the candidate will not appear on the presidential ballot.

On June 26, 2016, Trenton Pool submitted a certificate nominating Plaintiff as the presidential candidate for the American Delta Party. Dkt. 15-1 at 37–59, 69–81. The certificate of nomination was supported by over 2,600 nominating petitions. Dkt. 15-1 at 36, 57. On August 1, 2016, the State informed Trent Pool that the certificate of nomination failed to show that the American Delta Party published notice at least ten days before each of the party's conventions, Dkt. 15-1 at 61. In that email, the State requested that Plaintiff withdraw any "unsupported petition signatures," seeming to refer

to nominating petitions that were not obtained during a convention preceded by the requisite publication of notice. Dkt. 15-1 at 61.

On August 8, 2017, the State rejected Plaintiff's certificate of nomination because it did not "include proof of publication of the notice calling the convention." Dkt. 15-1 at 83. More specifically, the State rejected Plaintiff's certificate of nomination because it failed to show that notice was "published *in a newspaper of general circulation within the county in which the party or candidate intends to hold a convention.*" *Id.* (emphasis in original). As a result, the State refused to place Plaintiff's name on the ballot.

On September 19, 2016, Plaintiff commenced this lawsuit by filing his complaint. Dkt. 1. Plaintiff's complaint claims that the publication of notice requirement found in RCW 29A.56.620 is a violation of his First Amendment rights. *Id.*

On September 21, 2016, he moved for an emergency injunction to enjoin the State from enforcing RCW 29A.56.620 and to require the reprinting of ballots for the 2016 general election. Dkts. 1–11. The State opposed the motion. Dkts. 13–17. At a hearing on September 26, 2016, the Court denied Plaintiff's motion and refused to issue an emergency injunction. Dkt. 18. The Court also asked that the parties submit a joint status report setting a schedule for promptly resolving the case. *Id.*

On October 7, 2016, the parties submitted their joint status report. Dkt. 21. On October 17, 2016, the Court issued a scheduling order setting a trial date and deadlines for motions, including motions for leave to amend the pleadings. Dkt. 22.

On October 18, 2017, Plaintiff filed his present motion for summary judgment. Dkt. 30. On October 27, 2017, the State responded and filed its cross-motion for

to nominating petitions that were not obtained during a convention preceded by the requisite publication of notice. Dkt. 15-1 at 61.

On August 8, 2017, the State rejected Plaintiff's certificate of nomination because it did not "include proof of publication of the notice calling the convention." Dkt. 15-1 at 83. More specifically, the State rejected Plaintiff's certificate of nomination because it failed to show that notice was "published *in a newspaper of general circulation within the county in which the party or candidate intends to hold a convention.*" *Id.* (emphasis in original). As a result, the State refused to place Plaintiff's name on the ballot.

On September 19, 2016, Plaintiff commenced this lawsuit by filing his complaint. Dkt. 1. Plaintiff's complaint claims that the publication of notice requirement found in RCW 29A.56.620 is a violation of his First Amendment rights. *Id.*

On September 21, 2016, he moved for an emergency injunction to enjoin the State from enforcing RCW 29A.56.620 and to require the reprinting of ballots for the 2016 general election. Dkts. 1–11. The State opposed the motion. Dkts. 13–17. At a hearing on September 26, 2016, the Court denied Plaintiff's motion and refused to issue an emergency injunction. Dkt. 18. The Court also asked that the parties submit a joint status report setting a schedule for promptly resolving the case. *Id.*

On October 7, 2016, the parties submitted their joint status report. Dkt. 21. On October 17, 2016, the Court issued a scheduling order setting a trial date and deadlines for motions, including motions for leave to amend the pleadings. Dkt. 22.

On October 18, 2017, Plaintiff filed his present motion for summary judgment. Dkt. 30. On October 27, 2017, the State responded and filed its cross-motion for

summary judgment. Dkt. 33. On November 6, 2017, Plaintiff filed his reply and response to the State's cross-motion for summary judgment. Dkt. 34. On November 9, 2017, the State filed a reply on its cross-motion.

## II.  DISCUSSION

The parties have filed competing cross-motions for summary judgment. Dkts. 30, 33. Plaintiff moves for summary judgment on the basis that RCW 29A.56.620, a ballot access regulation, poses an unconstitutional restraint on his First Amendment rights. Dkt. 30. The State moves for summary judgment on the basis that Plaintiff's claim is not justiciable and, in the alternative, RCW 29A.56.620 is a constitutional regulation reasonably related to an important State interest. Dkt. 33.

**A.   Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Justiciability**

The State moves for summary judgment on the basis that Plaintiff's claim is moot. Dkt. 33 at 8–14. "Mootness is a threshold jurisdiction issue." *S. Pac. Transp. Co. v. Pub. Util. Comm'n of Oregon*, 9 F.3d 807, 810 (9th Cir. 1993). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The State argues that Plaintiff's claim is moot because (1) any harm that Plaintiff suffered during

the 2016 election is not redressable and (2) any concerns regarding the 2020 presidential election is speculative and hypothetical. Dkt. 33 at 11–14.

However, the Court finds that Plaintiff's claims are justiciable. An exception to the mootness doctrine arises when an alleged harm is capable of repetition. *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). Under this exception, a plaintiff must show that "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again . . . ." *Id.* (quotations and citations omitted).

The State does not dispute that Plaintiff was prevented from being listed on the State's 2016 presidential ballot due to the restriction of RCW 29A.56.620. As long as RCW 29A.56.620 remains in effect, any minor party or independent candidate may be subject to the same alleged injury. Plaintiff's past candidacy and stated intent to run for President again in 2020 are sufficient to establish "a realistic danger" of repeated harm to Plaintiff himself, that is not so "imaginary or speculative" as to warrant dismissal. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000).

The fact that presidential elections are brief and occur only once every four years further evidences the applicability of this exception to the mootness doctrine due to the inability of parties to litigate the issue within the time period when the alleged harm is actually being inflicted. A minor party or independent candidate can only obtain signatures during a limited window of time; specifically, from the first Saturday of May until the fourth Saturday in July. RCW 29A.56.610. It is unlikely that Plaintiff's claim could be fully litigated within such a short 12-week window. Even if it could, Plaintiff

could suffer irreparable harm if the lapse of time in deciding this case left him with inadequate time to obtain the necessary 1,000 nominating petitions.

Also, to the extent that the State challenges Plaintiff's standing to bring his claim as it applies to independent candidates due to his affiliation with American Delta Party, the Court summarily rejects such an argument. Under its plain language, RCW 29A.56.620 applies equally to both minor parties and independent candidates. To the extent Plaintiff challenges the statute's requirement that a minor party or independent presidential candidate publish notice of its convention in a newspaper, any analysis of the requirement's constitutionality will necessarily apply with equal force to both types of candidates.

**C.     Challenge to RCW 29A.56.620**

Plaintiff challenges RCW 29A.56.620 on the basis that it places an unconstitutional burden on freedom of speech and association. Specifically, Plaintiff challenges the requirement that minor party and independent presidential candidates publish notice of a "convention" in a newspaper of general circulation at least ten days before the convention is held.

The result of RCW 29A.56.620 is that, in order for the 1,000 signatures needed to place a minor party or independent candidate on the presidential ballot to be considered valid, a minor party or independent candidate must incur the financial and logistic burden associated with publishing notice of a convention in each county it seeks to obtain signatures. Accordingly, even if the necessary number of individuals sign nomination petitions to place a minor party or independent candidate on the ballot within the allotted

timeframe for gaining such signatures, the nomination certificate and petitions will be considered invalid if notice of the "convention" was not properly published in a qualifying newspaper.

**1. Level of Scrutiny**

In deciding whether a local election law violates First Amendment rights, the Court must "weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). "When an election regulation imposes a severe burden on First Amendment rights, the state must show the law is narrowly tailored to achieve a compelling governmental interest—strict scrutiny review." *Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir. 2013) (citation and internal quotation marks omitted). On the other hand, the Court will "uphold restrictions that impose only a lesser burden on those rights so long as they are reasonably related to the state's important regulatory interest." *Lindsay v. Bowen*, 750 F.3d 1061, 1063 (9th Cir. 2014).

The parties dispute which one of these balancing tests should apply to the Court's review of RCW 29A.56.620. Plaintiff argues that the regulation must be evaluated with strict scrutiny. To support this argument, Plaintiff claims that RCW 29A.56.620 is a severe restriction on "core political speech." Dkt. 30 at 16. Specifically, Plaintiff explains that the term "convention" in RCW 29A.56.620 has been "watered down to mean any normal petitioning activity." Therefore, Plaintiff contends, RCW 29A.56.620 burdens "core" political activity by requiring that petitioning activity be preceded by a publication

of notice and a ten-day waiting period each time and place that a minor party seeks to obtain valid signatures for ballot access.

The Court finds that the burden imposed by RCW 29A.56.620 is slight, rather than severe, and is therefore subject to a less stringent level of scrutiny. While the First Amendment right to freedom of speech and association includes "the ability of citizens to band together in promoting among the electorate candidates who espouse their political views," *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000), the Ninth Circuit and Supreme Court have succinctly stated "[t]hat a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights," *Lindsay v. Bowen*, 750 F.3d 1061, 1064 (9th Cir. 2014) (quoting *Timmons*, 520 U.S. at 359). While there are exceptions to this general rule, a ballot-access regulation imposes a "severe" restriction only "if it *significantly impairs* access to the ballot, *stifles* core political speech, or *dictates* electoral outcomes." *Chamness*, 722 F.3d at 1116 (internal quotations omitted and emphasis added). In other words, "[a] restriction is particularly unlikely to be considered severe when a candidate is given other means of disseminating the desired information." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002).

RCW 29A.56.620 does not directly restrict or limit the efforts of a minor party or independent candidate to associate freely or espouse political viewpoints. There are no allegations that Plaintiff was ever discouraged or prevented by Defendant from disseminating his political beliefs, promoting his presidential campaign, or associating with potential voters. Nor did the statute on its own actually prevent supporters from

voting for Plaintiff, as state law still permitted him to submit his name for approval as a write-in candidate. RCW 29A.24.311(1).

This is not to say that RCW 29A.56.620 does not place any incidental burden on First Amendment associational rights. In some instances, RCW 29A.56.620 could be construed to foster a chilling effect on the associational rights of a controversial minor party or independent candidate's constituency. For instance, a person may be in favor of a Marxist candidate. They may even be willing to ascribe their name to a nominating petition in favor of that candidate. However, due to the unpopularity against Marxist political ideals that have historically resulted in violent and forceful opposition, a person may be afraid of the potential dangers associated with physically gathering at a convention in favor of a Marxist platform where the gathering has been advertised in a newspaper with ten days' notice. *See e.g.*, *State v. Rice*, 110 Wn.2d 577, 584 (1988); *Abrams v. United States*, 250 U.S. 616 (1919). The Court need not offer any substantive analysis on this issue, however, as Plaintiff has not claimed that RCW 29A.56.620 had any chilling effect on his speech, and such chilling effects could only be characterized as minor at best.

Accordingly, even though RCW 29A.56.620 has the potential to create a minor chilling effect on associational rights while placing limits on the time, place, and manner of certain political activities—specifically, petitioning for nomination signatures—it cannot be said that the statute *stifles* core political speech. Nor can it be legitimately argued that RCW 29A.56.620 "significantly impairs" ballot access or "dictates electoral outcomes," considering the fact that five minor party and independent candidates

successfully complied with its requirements and were included on the State's 2016 presidential ballot. *See Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) ("[P]ast candidates' ability to secure a place on the ballot can inform the court's analysis."). Six minor party or independent candidates were also successfully listed on the presidential ballot in 2012.

The Court agrees fully with the State that the publication of notice in a newspaper of general jurisdiction is no more than a minimal hurdle to ballot access. Accordingly, in order to decide the question of whether RCW 29A.56.620 unconstitutionally regulates access to the presidential ballot, the Court need only consider whether the statute is reasonably related to an important regulatory interest of the State.

**2. Application of Balancing Test**

Showing that a ballot-access law is reasonably related to an important regulatory interest should be an easy hurdle for a state to overcome. To prevail, a state need only show that RCW 29A.56.620 in some way "protects the reliability and integrity of the election process." *Chamness*, 722 F.3d at 1117. *See also Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1025 (9th Cir. 2016). "[T]he State's asserted regulatory interests need only be sufficiently weighty to justify the limitation imposed on the party's rights.'" *Timmons*, 520 U.S. at 364 (internal quotation omitted). However, even under this highly deferential standard, the requirement that minor party and independent candidates publish advance notice of their conventions in a newspaper of general circulation appears arbitrary.

As noted by the State, "[t]he statute's only requirement is that the public receive notice of the date, time, and location [of a convention] so that interested voters can attend if they so choose." *Id.* at 22. The State argues that this notice requirement protects the integrity of elections by (1) providing the public with notice and a point of contact regarding an opportunity to learn about a minor party or independent candidate, and (2) giving notice of the convention to those persons desirous of being appointed as an elector for a minor party. Dkt. 33 at 19–20. However, the State fails to draw any logical connection between these two intended purposes of the statute and the integrity of the election process. When boiled down, the State's argument can be stated as: requiring public notice of a convention protects the integrity of the election process by providing public notice of conventions.

Perhaps the State's argument is intended to advocate for protecting the integrity of our elections by fostering an informed electorate. The Court would agree that having well-informed voters is a vital piece of a successful election. But the Court fails to see how requiring minor and independent candidates to publish advance notice of a convention via newspaper reasonably furthers this interest beyond the already required nomination petitions of at least 1,000 registered voters. "In determining the nature and magnitude of the burden that [an] election procedure[] impose[s] . . . we must examine the entire scheme regulating ballot access." *Libertarian Party of Washington v. Munro*, 31 F.3d 759, 761–62 (9th Cir. 1994), *overruled on other grounds by Pub. Integrity All., Inc.*, 836 F.3d 1019. The State offers no explanation as to why or how a candidate who publishes advance notice of a convention in a newspaper does a better job of informing

the electorate of its platform than a candidate who does not, so long as both candidates present an otherwise valid certificate of nomination accompanied by the required number of nominating petitions. *See* RCW 29A.56.640. Indeed, if a party is capable of obtaining signed nominating petitions from at least 1,000 registered voters at a convention, the ten-day notice requirement of RCW 29A.56.620 seems like an arbitrary restraint on the validity of those registered voters' nominating petitions.

The State also seems to argue that the Court should rule in favor of RCW 29A.56.620 simply on the basis that it has been in place since 1937. *See* Dkt. 33 at 4. The Court refuses to find that the reasonableness of a law may be measured by the length of time since its passing. If anything, while newspaper publication may have been the only effective means of informing the public of a potential candidate in 1937, the passing of time and the technological development of various media platforms may have rendered the requirement to publish notice in a newspaper obsolete, although it may be difficult to think of a more reasonable form of requirement for the publication of notice.

While the burden that RCW 29A.56.620 places on a minor party or political candidate's access to the ballot is minimal, the Court finds that State has failed, as of yet, to show how the statute furthers any interest advanced by the State. Nonetheless, the Court is reluctant to find that RCW 29A.56.620 is unconstitutional based solely on the parties' briefing. If the Court were to limit its consideration to the arguments advanced in the State's briefing, it appears that a review of the Court's decision on appeal would not be limited to those arguments. *See Timmons*, 520 U.S. at 367 (ruling that states have an interest in protecting a two-party system, even though this interest was not advanced by

the State in argument). Specifically, the Court is concerned that RCW 29A.56.620 may advance an important state interest by fostering healthy public discourse in offering communities notice and the opportunity to oppose any particular candidate seeking nominating petitions.

If the State has an interest in ensuring that those who sign nominating petitions are well-informed of their candidate's positions, it would seem that such an interest is advanced by affording the public an opportunity to attend the convention or otherwise express opposition to a candidate seeking nominating petitions. For instance, a known sexual predator might seek a minor party's nomination. If this person were able to individually target registered voters to obtain nominating petitions, the candidate might be able to obtain the required 1,000 petitions by omitting any details regarding his past transgressions. On the other hand, if required to obtain signatures at a publicized convention, the candidate might be prevented from obtaining the necessary 1,000 as a result of opposition from those who are aware of the candidate's history. In other words, it appears that RCW 29A.56.620 could be construed to provide opportunity for citizen opposition and thus protect the ballot from over-crowding by candidates that cannot gain support under the scrutiny of public debate and discourse. Accordingly, the Court will afford the parties a final opportunity to address the constitutionality of RCW 29A.56.620 at oral argument before issuing a ruling.

**D.      Challenge to RCW 29A.56.660**

In his reply, Plaintiff raises for the first time a constitutional challenge to the requirement in RCW 29A.56.660 that minor party or independent candidates even hold a

convention. This issue was neither pled in Plaintiff's complaint nor raised at any time prior to these summary judgment proceedings. *See* Dkt. 1 (challenging only RCW 29.A.56.620). Nor has Plaintiff requested leave to file an amended complaint. The Court will not consider claims not raised in the complaint, nor does the Court have authority to grant leave to amend at summary judgment when a party has failed to either request it or show good cause for their delay in doing so. *See* Fed. R. Civ. P. 16(b)(4) (A scheduling order "may be modified only for good cause and with the judge's consent.").

### III.  ORDER

Therefore, it is hereby **ORDERED** that Plaintiff's motion for summary judgment (Dkt. 30) and the State's cross-motion for summary judgment (Dkt. 33) are **RENOTED** for consideration on February 14, 2018. The parties shall appear before the Court for oral argument in Courtroom E on Wednesday, February 14, 2018 at 1:30 pm. Argument shall be limited to the single remaining issue in the parties' motions; namely, whether RCW 29A.56.620 is reasonably related to an important state regulatory interest.

Dated this 31st day of January, 2018.

BENJAMIN H. SETTLE
United States District Judge