UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROQUE "ROCKY" DE LA FUENTE,<br><br>            Plaintiff,<br><br>    v.<br><br>KIM WYMAN, in her official capacity<br>as the Secretary of State for the State of<br>Washington,<br><br>           Defendant. | CASE NO. C16-5801 BHS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S CROSS-MOTION<br>FOR SUMMARY JUDGMENT |

This matter comes before the Court on the motion for summary judgment of Plaintiff Roque "Rocky" De La Fuente ("Plaintiff") and the cross-motion for summary judgment of Defendant Kim Wyman in her role as Washington State's Secretary of State ("the State"). Dkts. 30, 33. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and for the reasons stated below hereby grants Plaintiff's motion and denies Defendant's motion.

## I. BACKGROUND

In 2016, Plaintiff ran as a candidate for President of the United States. In pursuit of the presidency, Plaintiff sought to be placed on Washington State's ballot as a candidate for the American Delta Party.

Washington State regulations provide that minor party or independent presidential candidates may be placed on the State's ballot by obtaining a valid nomination and presenting the Secretary of State with a "certificate of nomination." RCW 29A.56.600–.670. To be nominated, a minor party or independent candidate must hold one or multiple "conventions," each attended by at least one hundred voters, whereat the candidate obtains "nominating petitions" from at least 1,000 registered Washington voters. RCW 29A.56.600–.620. A "nominating petition" must be signed and bear the voter's printed name and address. RCW 29A.56.630.

This case revolves around the State's requirement that a convention be proceeded by the publication of ten days' notice in a newspaper of general circulation. Specifically, the State requires:

> Each minor party or independent candidate must publish a notice in a newspaper of general circulation within the county in which the party or the candidate intends to hold a convention. The notice must appear at least ten days before the convention is to be held, and shall state the date, time, and place of the convention. Additionally, it shall include the mailing address of the person or organization sponsoring the convention.

RCW 29A.56.620.

A minor party or independent presidential candidate can then be placed on the ballot by presenting the Secretary of State with a "certificate of nomination." RCW 29A.56.640. To be valid, the certificate must:

> (1) Be in writing;
> (2) Contain the name of each person nominated, his or her residence, the office for which he or she is named, and a sworn statement from both nominees giving their consent to the nomination;
> (3) Identify the minor political party or the independent candidate on whose behalf the convention was held;

(4) Be verified by the oath of the presiding officer and secretary;

(5) Be accompanied by a nominating petition or petitions bearing the signatures and addresses of at least one thousand registered voters of the state of Washington;

(6) Contain proof of publication of the notice of calling the convention; and

(7) Be submitted to the secretary of state not later than the first Friday of August.

*Id.* If a party has failed to publish notice of a convention in compliance with RCW 29A.56.620 and submit proof of that publication, then the certificate of nomination will be rejected by the Secretary of State and the candidate will not appear on the presidential ballot.

On June 26, 2016, Trenton Pool submitted a certificate nominating Plaintiff as the presidential candidate for the American Delta Party. Dkt. 15-1 at 37–59, 69–81. The certificate of nomination was supported by over 2,600 nominating petitions. Dkt. 15-1 at 36, 57. On August 1, 2016, the State informed Trenton Pool that the certificate of nomination failed to show that the American Delta Party published notice at least ten days before each of the party's conventions, Dkt. 15-1 at 61. In that email, the State requested that Plaintiff withdraw any "unsupported petition signatures," seeming to refer to nominating petitions that were not obtained during a convention preceded by the requisite publication of notice. Dkt. 15-1 at 61.

On August 8, 2017, the State rejected Plaintiff's certificate of nomination because it did not "include proof of publication of the notice calling the convention." Dkt. 15-1 at 83. More specifically, the State rejected Plaintiff's certificate of nomination because it failed to show that notice was "published *in a newspaper of general circulation within*

1   *the county in which the party or candidate intends to hold a convention.*" *Id.* (emphasis in
2   original). As a result, the State refused to place Plaintiff's name on the ballot.

3        On September 19, 2016, Plaintiff commenced this lawsuit by filing his complaint.
4   Dkt. 1. Plaintiff's complaint claims that the publication of notice requirement found in
5   RCW 29A.56.620 and .640(6) is a violation of his First Amendment rights. *Id.*

6        On September 21, 2016, he moved for an emergency injunction to enjoin the State
7   from enforcing RCW 29A.56.620, .640(6) and to require the reprinting of ballots for the
8   2016 general election. Dkts. 1–11. The State opposed the motion. Dkts. 13–17. At a
9   hearing on September 26, 2016, the Court denied Plaintiff's motion to issue an
10  emergency injunction. Dkt. 18. The Court also asked that the parties submit a joint status
11  report setting a schedule for promptly resolving the case. *Id.*

12       On October 7, 2016, the parties submitted their joint status report. Dkt. 21. On
13  October 17, 2016, the Court issued a scheduling order setting a trial date and deadlines
14  for motions, including motions for leave to amend the pleadings. Dkt. 22.

15       On October 18, 2017, Plaintiff filed his present motion for summary judgment.
16  Dkt. 30. On October 27, 2017, the State responded and filed its cross-motion for
17  summary judgment. Dkt. 33. On November 6, 2017, Plaintiff filed his reply and response
18  to the State's cross-motion for summary judgment. Dkt. 34. On November 9, 2017, the
19  State filed a reply on its cross-motion.

20       On January 31, 2017, the Court entered an order discussing the parties' arguments,
21  setting forth the applicable legal standard for reviewing the validity of RCW 29A.56.620
22  and .640(6), reserving ruling on the parties' motions, and setting a date for oral argument.

1   Dkt. 41. On February 14, 2017, the parties appeared before the Court for oral argument.

2   Dkt. 42.

3                              **II.   DISCUSSION**

4          The parties have filed competing cross-motions for summary judgment. Dkts. 30,

5   33. Plaintiff moves for summary judgment on the basis that RCW 29A.56.620 and

6   .640(6) pose an unconstitutional restraint on his First Amendment rights. Dkt. 30. The

7   State moves for summary judgment on the basis that Plaintiff's claim is not justiciable

8   and, in the alternative, RCW 29A.56.620 and .640(6) impose a constitutional regulation

9   reasonably related to an important State interest. Dkt. 33. The Court has already ruled

10  against the State's justiciability argument in its previous order. Dkt. 41 at 6–8. Therefore,

11  the sole issue remaining before the Court is whether RCW 29A.56.620 and .640(6) are a

12  constitutional regulation reasonably related to an important State interest.

13         Summary judgment is proper only if the pleadings, the discovery and disclosure

14  materials on file, and any affidavits show that there is no genuine issue as to any material

15  fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

16  The moving party is entitled to judgment as a matter of law when the nonmoving party

17  fails to make a sufficient showing on an essential element of a claim in the case on which

18  the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

19  (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

20  could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec.*

21  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

22  present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc*., 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

Plaintiff challenges RCW 29A.56.620's requirement that minor party and independent presidential candidates publish notice of a "convention" in a newspaper of general circulation at least ten days before the convention is held on the basis that it places an unconstitutional burden on freedom of speech and association. The only practical result of RCW 29A.56.620 and .640(6) is that, in order for the 1,000 signatures needed to place a minor party or independent candidate on the presidential ballot to be

1   considered valid, a minor party or independent candidate must incur the financial and

2   logistic burden associated with publishing notice of a convention in each county the

3   candidate seeks to obtain signatures. Accordingly, even if the candidate timely obtains

4   the required number of nominating petitions, the State will reject the nomination

5   certificate and the petitions will be considered invalid if notice of the convention was not

6   properly published in a qualifying newspaper.

7        In deciding whether a local election law violates First Amendment rights, the

8   Court must "weigh the character and magnitude of the burden the State's rule imposes on

9   those rights against the interests the State contends justify that burden, and consider the

10  extent to which the State's concerns make the burden necessary." *Timmons v. Twin Cities*

11  *Area New Party*, 520 U.S. 351, 358 (1997). "When an election regulation imposes a

12  severe burden on First Amendment rights, the state must show the law is narrowly

13  tailored to achieve a compelling governmental interest—strict scrutiny review."

14  *Chamness v. Bowen*, 722 F.3d 1110, 1116 (9th Cir. 2013) (citation and internal quotation

15  marks omitted). On the other hand, the Court will "uphold restrictions that impose only a

16  lesser burden on those rights so long as they are reasonably related to the state's

17  important regulatory interest." *Lindsay v. Bowen*, 750 F.3d 1061, 1063 (9th Cir. 2014).

18       In their briefs, the parties dispute which one of these balancing tests should apply

19  to the Court's review of RCW 29A.56.620. Plaintiff argues that the regulation must be

20  evaluated with strict scrutiny. To support this argument, Plaintiff claims that RCW

21  29A.56.620 is a severe restriction on "core political speech." Dkt. 30 at 16. Specifically,

22  Plaintiff explains that the term "convention" in RCW 29A.56.620 has been "watered

1    down to mean any normal petitioning activity." Therefore, Plaintiff contends, RCW

2    29A.56.620 burdens "core" political activity by requiring that petitioning activity be

3    preceded by a publication of notice and a ten-day waiting period each time and place that

4    a minor party or independent candidate seeks to obtain valid signatures for ballot access.

5    Also, Plaintiff suggested at oral argument that the statute would constitute a content-

6    based restriction if it was designed for the sole purpose of "stoking backlash" and

7    deterring minor party or independent political candidate speech. *See* Tr. of February 14,

8    2018 hearing at 14:18–23.

9        The Court remains convinced of its previous decision that the minimal burdens

10    imposed by RCW 29A.56.620 require the Court to uphold its validity so long as the State

11    can draw a reasonable relationship between the statute and a state interest. The burden

12    imposed by RCW 29A.56.620 is slight, rather than severe, and is therefore subject to a

13    less stringent level of scrutiny. A ballot-access regulation imposes a "severe" restriction

14    only "if it *significantly impairs* access to the ballot, *stifles* core political speech, or

15    *dictates* electoral outcomes." *Chamness*, 722 F.3d at 1116 (internal quotations omitted

16    and emphasis added). In other words, "[a] restriction is particularly unlikely to be

17    considered severe when a candidate is given other means of disseminating the desired

18    information." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002). RCW

19    29A.56.620 does not directly restrict or limit the efforts of a minor party or independent

20    candidate to associate freely or espouse political viewpoints. There are no allegations that

21    Plaintiff was ever discouraged or prevented by the State from disseminating his political

22    beliefs, promoting his presidential campaign, or associating with potential voters. Nor did

1   the statute on its own actually prevent supporters from voting for Plaintiff, as state law

2   still permitted him to submit his name for approval as a write-in candidate. RCW

3   29A.24.311(1). Even though RCW 29A.56.620 and .640(6) create a minor burden on

4   speech and associational rights—specifically, seeking and signing valid nomination

5   petitions—it cannot be said that the statute *stifles* core political speech. Nor can it be

6   legitimately argued that RCW 29A.56.620 "significantly impairs" ballot access or

7   "dictates electoral outcomes," considering the fact that five minor party and independent

8   candidates successfully complied with its requirements and were included on the State's

9   2016 presidential ballot and six were also successfully listed on the 2012 ballot. *See*

10  *Nader v. Brewer*, 531 F.3d 1028, 1035 (9th Cir. 2008) ("[P]ast candidates' ability to

11  secure a place on the ballot can inform the court's analysis."). Therefore, in regards to the

12  applicable standard of review, the Court agrees with the State that in order to decide the

13  question of whether RCW 29A.56.620 and .640(6) unconstitutionally regulate access to

14  the presidential ballot, the Court need only consider whether the statutes are reasonably

15  related to an important regulatory interest of the State.

16          While satisfying this standard is ordinarily an easy hurdle for a state to overcome,

17  the Court finds that the State has failed to satisfy this test in its defense of RCW

18  29A.56.620 and .640(6)'s publication of notice requirement. For the statutes to be

19  constitutional, the State only needed to show that they in some way "protect[] the

20  reliability and integrity of the election process." *Chamness*, 722 F.3d at 1117. *See also*

21  *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1025 (9th Cir. 2016). "[T]he

22  State's asserted regulatory interests need only be sufficiently weighty to justify the

1  limitation imposed on the party's rights." *Timmons*, 520 U.S. at 364 (internal quotation

2  omitted). However, even under this highly deferential standard, the requirement that

3  minor party and independent candidates publish advance notice of their conventions in a

4  newspaper of general circulation appears arbitrary and the State has failed to establish a

5  reasonable connection to a specified State interest.

6      As noted by the State, "[t]he statute's only requirement is that the public receive

7  notice of the date, time, and location [of a convention] so that interested voters can attend

8  if they so choose." Dkt. 33 at 22. In its briefs, the State argues that this notice

9  requirement protects the integrity of elections by (1) providing the public with notice and

10  a point of contact regarding an opportunity to learn about a minor party or independent

11  candidate, and (2) giving notice of the convention to those persons desirous of being

12  appointed as an elector for a minor party. *Id.* at 19–20. However, as noted in the Court's

13  previous order, such an argument is circular and fails to draw any logical connection

14  between these two intended purposes of the notice requirement and the integrity of the

15  election process. The State cannot prevail by arguing that requiring public notice of a

16  convention protects the integrity of the election process simply because it provides public

17  notice of conventions.

18      At oral argument, the State further argued that public notice of the conventions

19  serves the purpose of inviting the public to engage in the electoral process and therefore

20  protects the integrity of our elections by fostering an informed electorate. While the Court

21  agrees that having well-informed voters is a vital piece of our elections, the State has

22  failed to explain how requiring minor and independent candidates to publish advance

1   notice of a convention via newspaper reasonably furthers this interest beyond the

2   requirement of obtaining at least 1,000 nominating petitions from registered voters. *See*

3   RCW 29A.56.640. "In determining the nature and magnitude of the burden that [an]

4   election procedure[] impose[s] . . . we must examine the entire scheme regulating ballot

5   access." *Libertarian Party of Washington v. Munro*, 31 F.3d 759, 761–62 (9th Cir. 1994),

6   *overruled on other grounds by Pub. Integrity All., Inc.*, 836 F.3d 1019. Under the entire

7   scheme governing the validity of a nominating certificate, if a party is capable of

8   obtaining nominating petitions from at least 1,000 registered voters, the ten-day notice

9   requirement of RCW 29A.56.620 appears to be an arbitrary restriction on the validity of

10   those registered voters' petitions. Moreover, the State has failed to submit any evidence

11   that the notice requirement of RCW 29A.56.620 actually results in any increase in the

12   public's election participation. As noted by Plaintiff's counsel at oral argument, "[RCW

13   29A.56.620] is not really tethered to any state interest. Frankly, the record shows that this

14   notice requirement doesn't do anything. Nobody sees it. Nobody acts on it . . . It is not

15   tethered. It is a big fat nothing burger." Tr. of February 14, 2018 hearing at 16:10–18.

16         The best argument advanced by the State is that RCW 29A.56.620 and .640(6)

17   reduce ballot clutter. Reducing ballot clutter is a recognized important regulatory interest,

18   and at the very least, the statute was successful in keeping Plaintiff's name off the ballot.

19   However, the Court finds that any effect that these statutes have in reducing ballot clutter

20   is incidental and the notice requirement does not bear any reasonable connection to the

21   underlying policies that support reducing ballot clutter. The broad interest of "reducing

22   ballot clutter" is a catch-all expression covering the more particularized interests of

1   avoiding ballot manipulation and voter confusion. *Munro v. Socialist Workers Party*, 479

2   U.S. 189, 193–94 (1986). One authorized method for achieving these goals is to eliminate

3   would-be candidates who cannot muster a significant modicum of support. *Id.* (quoting

4   *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)) ("[T]here is surely an important state

5   interest in requiring some preliminary showing of a significant modicum of support

6   before printing the name of a political organization's candidate on the ballot—the

7   interest, if no other, in avoiding confusion, deception, and even frustration of the

8   democratic process at the general election."). The present case illustrates how a minor

9   party or independent candidate may be capable of mustering what the State considers to

10  be a significant modicum of support—in this case the signed petitions of over 1,000

11  registered voters—yet still be excluded from the ballot for failing to give notice of

12  county-by-county conventions. Moreover, with the exception of Plaintiff, the parties have

13  failed to cite a single incident where the notice requirement of RCW 29A.56.620 and

14  .640(6) has previously kept a candidate off the ballot.

15       In holding oral argument, the Court contemplated that RCW 29A.56.620 may

16  advance an important state interest if the statute could be construed to provide an

17  opportunity for citizen opposition and thus protect the ballot from over-crowding by

18  candidates who are unable to gain sufficient support under the scrutiny of public debate

19  and discourse. *See* Dkt. 41 at 14–15. However, this issue was not briefed by the State nor

20  advocated at oral argument. Furthermore, Plaintiff claimed at oral argument that it would

21  move the regulation out of content-neutrality and into the realm of content-based

22  restrictions if the statutes were intended to chill the speech of minor party or independent

1   candidates while the State simultaneously takes upon itself the task of informing

2   registered voters of major parties' primaries. Because this issue was brought to the

3   parties' attention in the Court's previous order and not advocated by the State at oral

4   argument, the Court will not consider it further.

5          Based on the forgoing, the Court finds that the State has failed to show how RCW

6   29A.56.620 and .640(6) are reasonably related to an important state interest. Accordingly,

7   the Court must conclude that RCW 29A.56.620 and .640(6) constitute an unlawful (albeit

8   minimal) restriction on Plaintiff's First Amendment rights.

9                                         **III.  ORDER**

10         Therefore, it is hereby **ORDERED** that Plaintiff's motion for summary judgment

11   (Dkt. 30) is **GRANTED** and the State's cross-motion for summary judgment (Dkt. 33) is

12   **DENIED**. In light of this order, the parties shall issue a joint status report no later than

13   March 24, 2018, proposing a schedule for resolving any outstanding matters that must be

14   addressed before the Court issues a final order and directs the entry of judgment in this

15   case.

16         Dated this 22nd day of February, 2018.

17

18                                         _____

19                                         BENJAMIN H. SETTLE
                                           United States District Judge

20

21

22